USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/2/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN FOLEY,

                Plaintiff,

v.

PETER WILSON AND KPC, LLC,

                Defendants.

No. 18-CV-504 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Benjamin Foley, a lawyer proceeding *pro se*,[1] filed this action against Defendants Peter Wilson and KPC, LLC for breach of contract, unjust enrichment, and fraud under New York state law.[2] Although Defendant Wilson, also proceeding *pro se*, eventually filed an Answer (over fifteen months after the Complaint was filed), Defendant KPC has not yet appeared in this action, and Defendant Wilson has failed to comply with several Court orders or otherwise indicate that he intends to defend this action since the filing of his Answer. Now before the Court is Plaintiff's motion for default judgment against both Defendants for failure to comply with the Court's orders under Federal Rule of Civil Procedure 37(b)(2)(A), and for failure to defend this action under

---

[1] As an attorney, Plaintiff is not entitled to the special solicitude generally afforded to *pro se* parties. *See Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) and *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)).

[2] The Court notes that Plaintiff's complaint also includes, as a fourth cause of action, a "federal claim" for securities fraud. There are no allegations, however, in the Complaint to support a claim for securities fraud. Indeed, in his affidavits filed in support of his motions for default judgment, Plaintiff states that this action is to "recover $400,000 plus interest owed by the defendant to plaintiff for breach of contract, unjust enrichment, and fraud." *See, e.g.*, Foley Aff., Dkt. 30 ¶ 3. Plaintiff does not mention a federal claim for securities fraud in any of these submissions. Plaintiff also repeatedly asserts that this Court's subject matter jurisdiction is based on diversity jurisdiction, and not based on any federal law or statute. *See, e.g.*, Oct. 1, 2019 Mot., Dkt. 30 at 1. The Court thus construes Plaintiff's Complaint as pleading only three causes of action: breach of contract, unjust enrichment, and fraud.

Federal Rule of Civil Procedure 55(a). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

### I. Facts[3]

Plaintiff, a resident of Florida, and Wilson, a resident of California, entered into an agreement in February 2012, whereby Wilson agreed to purchase stock on behalf of Plaintiff from a company named Uniloc. Compl. ¶¶ 3, 5, 7. Since Wilson was a "large shareholder" of Uniloc and "purchasing more shares," he allegedly offered to purchase shares for Plaintiff and to then transfer those shares to him. *Id.* ¶ 8. According to Plaintiff, prior to their investment agreement, Wilson and Plaintiff met on "at least two occasions" for dinner in Manhattan, New York, and Wilson visited Plaintiff's "place of business" in Manhattan on "at least one occasion." Foley Amended Aff., Dkt. 15 ¶ 5. Plaintiff and Wilson also allegedly "discussed Uniloc and the investment opportunity" on "several occasions" while in New York. *Id.* Plaintiff asserts that Wilson "traveled from California to New York," where Plaintiff has a business, "to solicit" the funds for his "fraudulent investment scheme." *Id.*

Plaintiff also alleges that Wilson's son, Clayton, who was a New York resident and an employee of Plaintiff's business at the time, participated in the agreement and solicitation of funds from Plaintiff by acting as "an agent" for his father. *See id.* ¶¶ 4, 6. Plaintiff further asserts that he worked "daily side by side" with Clayton during this time, and that he, Clayton, and Wilson "discussed the potential investment over dinner, on the phone, and via email." *Id.* ¶ 6.

---

[3] The following facts are drawn from the Complaint and the exhibits thereto, Wilson's Answer, and the affidavits and exhibits submitted by Plaintiff in connection with his motions for default judgment.

2

Although "many of the details of the agreement were oral," Plaintiff alleges that "key elements" of the agreement, such as the purchase price, were "memorialized in email." Compl. ¶ 9. Specifically, on February 7, 2012, Wilson emailed Plaintiff with the "terms" of the deal, stating "400k @ $40 per share or better....confirmed. Doc tomorrow or the next day." *See id.* ¶ 10; Compl. Ex. C. In that same email, Wilson provided Plaintiff with wire instructions, in which he directed Plaintiff to wire the money to a bank account titled "KPC, llc."[4] *See* Compl. ¶ 11; Compl. Ex. C. Plaintiff alleges that he "promptly accepted said offer" and wired $400,000 from his New York business account, which was "established in a New York bank," to Wilson's "KPC, LLC" account. Compl. ¶ 12. At the very least, it appears that Plaintiff expected to receive a certain amount of stock in Uniloc in exchange for the $400,000 that he transferred to Wilson. It is undisputed that Plaintiff never received those or any other shares.

Plaintiff alleges that in the weeks following the agreement, Wilson "represented" that "Uniloc and Microsoft had entered into a large, confidential settlement." *Id.* ¶ 15. Wilson subsequently sent Plaintiff a text message on March 6, 2012, stating "U owe me," to which Plaintiff replied "Haaaaa, agreed." *See id.* ¶ 15; Compl. Ex. B.

According to Plaintiff, Wilson also "made assurances" on several occasions that "performance of his obligation [under the agreement] had been perfected and evidence was forthcoming." *Id.* ¶ 14. Plaintiff asserts, however, that in 2017, Wilson "admitted the shares had not been transferred due to a previously undisclosed shareholder restriction of transfer." *Id.* ¶ 16.

---

[4] While the relationship between Wilson and KPC is not entirely clear, Wilson is listed as the "Manager" of KPC on the registration form filed with California's Secretary of State for KPC, and signed that form in June 2010. *See* Compl. Ex. A. In addition, Wilson is an authorized agent of KPC for the purposes of receiving service of legal papers, *see* Dkt. 17, and appears to share a mailbox and address with KPC, *see* Foley Amended Aff., Dkt. 15 ¶¶ 10-12. KPC thus appears to be Wilson's company.

Plaintiff alleges that Defendants have failed to deliver the "full purchase price" of the shares to him, "despite years of assurances that said interest would be delivered," *id.* ¶ 6, and that to date, he has received "no consideration for the $400,000 wire sent as directed by the contract between" himself and Wilson, *id.* ¶ 17. In his Answer, Wilson avers that the shares at issue "reside in KPC llc as per the agreement." Answer ¶ 6.

## II. Procedural History

Plaintiff commenced this action on January 19, 2018, asserting claims for breach of contract, unjust enrichment, and fraud under New York state law, and seeking repayment of the $400,000 that he wired to Wilson in February 2012, as well as interest at the "statutory rate of 9%" under N.Y. C.P.L.R. § 5001. Dkt. 1.

Defendants were served with a Summons and Complaint on January 23, 2018, according to affidavits of service that Plaintiff filed on January 30, 2018. *See* Dkts. 5, 6. According to those affidavits, Defendants had been served by "sub-serv[ing] the summons on Pat Palazuelos, owner of The UPS Store at 3334 E. Coast Hwy, Corona del Mar, CA 92925." Dkts. 5, 6. The server told Ms. Palazuelos that she "was serving legal papers on [each Defendant] and she said she would put them in mailbox #412." *Id.* Thereafter, copies of the documents were apparently mailed "to the same address" for each Defendant. *Id.* Plaintiff also avers that a "courtesy copy" of the Summons and Complaint was emailed to Wilson on February 5, 2018. *See* Foley Amended Aff., Dkt. 15, Ex. C.

On February 27, 2018, Plaintiff filed a "Request for Entry of Default," addressed to the Clerk of Court. Dkt. 7. On May 11, 2018, the Clerk of Court issued Certificates of Default as to both Defendants. *See* Dkts. 9, 10.

4

On May 14, 2018, the Court directed Plaintiff to (1) submit a motion for default judgment in accordance with the Court's Individual Rules & Practices in Civil Cases, (2) explain why service was proper under Federal Rule of Civil Procedure 4, and (3) show cause why the Complaint should not be dismissed for lack of personal jurisdiction. *See* Dkt. 11. Plaintiff filed his motion for default judgment on June 15, 2018, and in it, addressed the Court's question concerning personal jurisdiction. *See* Dkt. 12. Plaintiff explained that Wilson, a resident of California, "availed himself to this jurisdiction when he traveled to this jurisdiction to solicit the fraudulent investment in question and by using his son, a New York resident at the time and employee of [Plaintiff's] New York based business, as an agent in said solicitation." Foley Aff., Dkt. 12 ¶ 4. Plaintiff also asserted that on "at least two occasions," he and Wilson met in Manhattan, on "at least one occasion," Wilson "visited [his] place of business" in Manhattan, and on "several occasions" while in New York, Plaintiff and Wilson "discussed Uniloc and the investment opportunity." *Id.* ¶ 5. As to the Court's question regarding service, however, although Plaintiff submitted the affidavits of service dated January 30, 2018, Dkts. 5, 6, stated that such service constituted "personal service," and stated that he also emailed a courtesy copy to "the defendant" (presumably Wilson), he did not explain why his method of service satisfied the Federal Rules of Civil Procedure. *See* June 15, 2018 Mot., Dkt. 12, at 1.

The Court denied Plaintiff's motion for default judgment without prejudice on August 14, 2018. *See* Dkt. 13. The Court ordered Plaintiff to either (1) file an amended motion for default judgment explaining why service was properly effectuated on both Defendants under Federal Rules of Civil Procedure 4(e) and 4(h), or under state law to the extent permitted by those rules, or (2) file a letter requesting an extension of time to effectuate proper service on both Defendants under Federal Rule of Civil Procedure 4(m). Dkt. 13 at 3.

5

On September 18, 2018, Plaintiff filed an amended motion for default judgment and a supporting affidavit in response to the Court's August 14th Order. *See* Dkts. 14, 15. In it, Plaintiff asserted that he "properly served" both Defendants pursuant to Rules 4(e)(1) and 4(h), and under California Business and Professions Code § 17538.5(f), which, Plaintiff explained, "requires any person obtaining a private mailbox to authorize a commercial mail receiving agency . . . to act as an agent for service of process." *See* Sept. 18, 2018 Mot., Dkt. 14, at 1.

Plaintiff also served both Defendants again on March 30, 2019, this time serving Wilson in person both individually and as the authorized agent of KPC at an address in Laguna Beach, California. *See* Dkts. 17, 18. On April 30, 2019, Wilson, proceeding *pro se*, submitted an Answer to the Complaint. Dkt. 19.[5] To date, KPC has not filed an Answer or otherwise appeared in the action.

The Court ordered that all parties and/or their counsel appear for an initial status conference on June 21, 2019. *See* Dkt. 20. The Court also notified KPC that, as a limited liability company, it must be represented by counsel and could not proceed *pro se*. *See id.* at 2-3. Defendants failed to appear at the June 21, 2019 conference. *See* Dkt. 23. In an Order dated June 24, 2019, the Court adjourned the conference to July 8, 2019 (subsequently adjourned again to July 26, 2019, *see* Dkt. 24), and ordered Wilson to file a letter explaining his absence and the efforts he has taken to secure representation for KPC. Dkt. 23. The Court also advised Defendants that "if they again fail to appear at the conference or otherwise do not indicate their intent to defend this action, the Court

---

[5] In his Answer, Wilson asserted that the "statute of limitations bars this action in that the events described in the complaint occurred more than seven years before the lawsuit was filed." Answer at 2. The Court disagrees. Under New York law, the statute of limitations for both breach of contract and unjust enrichment is six years. *See* N.Y. C.P.L.R. § 213; *Haining Zhang v. Schlatter*, 557 F. App'x 9, 12 (2d Cir. 2014) (unjust enrichment); *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (breach of contract). As to a fraud claim brought under New York law, "the statute of limitations . . . is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it.'" *Gander Mountain Co. v. Islip U-Slip LLC*, 561 F. App'x 48, 49 (2d Cir. 2014) (quoting N.Y. C.P.L.R. § 213(8)). As this action was filed within six years of the events alleged in the Complaint, it is not barred by the statute of limitations.

may consider imposing sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure." *Id.*

Defendants again failed to appear at the July 26, 2019 conference. *See* Dkt. 25. In an Order filed later that day, the Court denied Plaintiff's amended motion for default judgment, but ordered Wilson to file a letter by August 20, 2019 explaining why he failed to appear at the June 21st and July 26th conferences, why he failed to submit a letter in response to the Court's June 24th Order, and what efforts he has taken to secure representation for KPC. *See id.* The Court also stated that, if Defendants again fail to comply with the Court's order, Plaintiff may renew his motion for default judgment pursuant to either Rule 37(b)(2)(A) or Rule 55(a). *Id.*

To date, Defendants have not responded to the Court's June 24th or July 26th Orders, or otherwise indicated their intent to defend this action. Plaintiff filed his renewed motion for default judgment on September 16, 2016, Dkt. 28, and then re-filed that motion on October 1, 2019, Dkt. 30.[6]

## DISCUSSION

Under Federal Rule of Civil Procedure 55, a court may, on a plaintiff's motion, enter a default judgment against a defendant that has failed to plead or otherwise defend the action brought against it. Fed. R. Civ. P. 55(a)-(b). In particular, "the court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373

---

[6] The motions for default judgment filed at Dkts. 28 and 30 appear to be the same filing, except that Dkt. 30 contains one extra page in Exhibit B, which Dkt. 28 appears to be missing. The Court will thus treat Dkt. 30 as the operative motion for default judgment.

7

F.3d 241, 246 (2d Cir. 2004). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). A court is required to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In addition, under Federal Rule of Civil Procedure 37(b)(2)(A), a court may impose sanctions against a party that fails to comply with a court order, including by "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

As previously mentioned, Plaintiff moves for default judgment with respect to his claims for breach of contract, unjust enrichment, and fraud. Plaintiff seeks $400,000 in damages, as well as "interest at 9% from February 2012," costs, and disbursements, for a total amount of $768,777.00. *See* Oct. 1, 2019 Mot., Dkt. 30, at 1-2. As an initial matter, both Defendants have defaulted under Rule 55 because they have failed to "otherwise defend" this action, including by failing to comply with the Court's orders and, for KPC, by failing to appear at all. *See Leviton Mfg. Co. v. Fastmac Performance Upgrades, Inc.*, No. 13 Civ. 01629 (LGS), 2013 WL 12334706, at *2 (S.D.N.Y. Aug. 20, 2013).

### I. Breach of Contract Claim

The Complaint establishes liability for breach of contract as a matter of law. To state a claim for breach of contract under New York law, a plaintiff must show: "(1) the existence of a contract between [himself] and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52

8

(2d Cir. 2011). Here, the Complaint establishes that Plaintiff and Wilson entered into an oral contract—although the price was also memorialized in a brief email—by which Plaintiff agreed to transfer $400,000 to Wilson, and Wilson agreed to use Plaintiff's money to buy shares of Uniloc and to then transfer such shares to Plaintiff. *See* Compl. ¶¶ 7-12; Compl. Ex. C. The Complaint sufficiently alleges that Plaintiff fulfilled his obligations under the contract, *see* Compl. ¶ 12,[7] but that Wilson breached the contract by failing to deliver the shares in Uniloc to Plaintiff. *See* Compl. ¶¶ 6, 16-17. The Complaint also establishes that Plaintiff was damaged by Wilson's breach since he alleges that he has not received anything of value in return for the $400,000.

As to KPC, while "[o]rdinarily, a non-party to a contract cannot be bound by the contract," a plaintiff may nonetheless "state a claim for breach of contract against a non-signatory where the plaintiff adequately alleges that the non-signatory was the 'alter ego' of one or more of the signatories to the contract." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 130 (S.D.N.Y. 2015) (quoting *Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*, No. 07 Civ. 10490(NRB), 2009 WL 855648, at *3 (S.D.N.Y. Mar. 25, 2009)). A court thus "may pierce the corporate veil where (i) the owner exercised complete domination over the corporation with respect to the transaction at issue, and (ii) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018) (quoting *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 494 (S.D.N.Y. 2018)). Since Wilson is the "Manager" of KPC, *see* Compl. Ex. A, signed the registration form filed with California's Secretary of State for KPC, *see id.*, is an authorized agent of KPC for the purposes of receiving service of legal papers, *see* Dkt. 17, and appears to share a

---

[7] This finding is bolstered by the fact that, although Wilson denied this allegation by stating that "two wires were sent," he did not deny the substance of the allegation in paragraph 12—i.e., that Plaintiff wired a total of $400,000 to Wilson's "KPC, LLC" account. *See* Answer ¶ 12; Compl. ¶ 12.

mailbox and address with KPC, *see* Foley Amended Aff., Dkt. 15 ¶¶ 10-12, the Court is persuaded that KPC is the "alter ego" of Wilson for the purposes of Plaintiff's breach of contact claim. This is particularly so given that the $400,000 that Plaintiff wired to Wilson was sent to a bank account in KPC's name, *see* Compl. Ex. C, and Wilson avers that "KPC still has [the] shares," *see* Answer ¶¶ 6, 35. Thus, the Complaint establishes liability for breach of contract as to both Defendants.

Damages for a breach of contract claim are "intended to place a party in the same position as he or she would have been in if the contract had not been breached." *Gray v. Proteus Sports & Racing Cars Ltd.*, No. 13-CV-8717 (JGK), 2014 WL 7330859, at *5 (S.D.N.Y. Dec. 23, 2014); *see also Lucente v. IBM Corp.*, 310 F.3d 243, 262 (2d Cir. 2002). Plaintiff is thus entitled to $400,000 in breach of contract damages.

Additionally, under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) (citing N.Y. C.P.L.R. §§ 5001 & 5002). Such interest accrues at a statutory rate of 9% per annum, and is "computed from the earliest ascertainable date the cause of action existed." *See Nwagboli v. Teamwork Transp. Corp.*, No. 08-CV-4562 (JGK) (KNF), 2009 WL 4797777, at *12 (S.D.N.Y. Dec. 7, 2009) (quoting N.Y. C.P.L.R. §§ 5001(b) and 5004). "[W]hen the record does not reveal the date on which a plaintiff's cause of action arose, prejudgment interest may be awarded from the date a plaintiff commenced the action." *Id.* (citing *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994)). Although Plaintiff seeks interest beginning from February 2012, *see* Oct. 1, 2019 Mot., Dkt. 30 at 1; Foley Aff., Dkt. 30 ¶ 19; Compl. ¶ 23, it is not clear to the Court why that date is "ascertainable" as the one on which his cause of action "existed." *Nwagboli*, 2009 WL 4797777, at *12. Accordingly, no later than February 3, 2020, Plaintiff shall submit evidence and/or legal argument that

10

demonstrates when his breach of contract cause of action first arose. If he fails to do so, the Court will calculate the prejudgment interest from the date that he filed his complaint. *See id.*[8]

## II. Unjust Enrichment and Fraud Claims

The Court will not grant judgment on either the unjust enrichment or fraud claims. First, Plaintiff's unjust enrichment claim is duplicative of his breach of contract claim. A claim for unjust enrichment "is a quasi-contractual claim that ordinarily can be maintained only in the absence of a valid, enforceable contract." *Lefkowitz v. Reissman*, No. 12-CV-8703 RA, 2014 WL 925410, at *11 (S.D.N.Y. Mar. 7, 2014) (quoting *Ellington Credit Fund, Ltd. V. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011)); *see also Navana Logistics Ltd. v. TW Logistics, LLC*, No. 15-CV-856 (PKC), 2016 WL 796855, at *7 (S.D.N.Y. Feb. 23, 2016) ("An action for unjust enrichment arises from a quasi-contractual obligation 'imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved.'") (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (1970)); *Nwagboli*, 2009 WL 4797777, at *9 ("[W]here there is an enforceable contract, either oral or written, an equitable remedy under a quasi-contract theory is not available."). Because there is an enforceable oral contract governing the parties' dispute, Plaintiff's unjust enrichment claim is precluded. *See, e.g.*, *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 266 (S.D.N.Y. 2017); *Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 323 (S.D.N.Y. 2014); *Nwagboli*, 2009 WL 4797777, at *9.

Second, the Complaint fails to establish a claim for fraud. To state a claim for fraud under New York law, a plaintiff must show: (1) "a material, false representation," (2) "an intent to defraud thereby," (3) "reasonable reliance on the representation," and (4) "damage to the plaintiff." *Navana Logistics*, 2016 WL 796855, at *10 (quoting *May Dep't Stores Co. v. Int'l Leasing Corp.*,

---

[8] Although Plaintiff also seeks "costs and disbursements of this action in the amount of $85," *see* Oct. 30, 2019 Mot., Dkt. 30 at 2, he has not provided any explanation as to that amount, and the Court declines to award it.

*Inc.*, 1 F.3d 138, 141 (2d Cir. 1993)). Where the plaintiff asserts a claim for fraud, the plaintiff must also satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). To do so, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citing *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)). Plaintiff has failed to satisfy the heightened pleading standards of Rule 9(b), and his fraud claim must thus be rejected. *See Seifts*, 61 F. Supp. 3d at 324

Plaintiff's fraud claim also fails because it arises out of the same facts as his breach of contract claim. "[A] cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *Seifts*, 61 F. Supp. 3d at 323-34 (citation omitted). Plaintiff alleges that Wilson "made false statements" and "assurances" concerning his obligations under their oral contract. *See* Compl. ¶¶ 14, 27. The alleged fraud is based entirely on the parties' oral contract and Wilson's alleged breach of that contract. As Plaintiff cannot maintain a separate claim for fraud, the fraud claim fails for this reason as well.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is granted as to the breach of contract claim and denied as to the remaining causes of action. Defendants must pay $400,000 in damages to Plaintiff. For purposes of calculating prejudgment interest, no later than February 3, 2020, Plaintiff must submit evidence and/or legal argument demonstrating when his breach of contract cause of action arose.

The Clerk of Court is respectfully directed to enter judgment in accordance herewith and terminate the motions pending at Dkts. 28 and 30.

SO ORDERED.

Dated: January 2, 2020
New York, New York

Ronnie Abrams
United States District Judge